# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TRINA KRUS, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>UW Health,<br><br>　　　　Defendant. | Case No.<br><br>**NOTICE OF REMOVAL** |

## DEFENDANT'S NOTICE OF REMOVAL

Defendant UW Health ("Defendant") files this Notice of Removal, in accordance with 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, to remove this action to the United States District Court for the Western District of Wisconsin. In support of this Notice of Removal, Defendant states as follows:

## PLAINTIFF'S COMPLAINT

1.　　On March 11, 2024, Plaintiff Trina Krus ("Plaintiff") filed her Class Action Complaint against Defendant in the Dane County, Wisconsin Circuit Court, Case No. 24–CV–734, Honorable Ann Peacock, Branch 12, (the "State Court Action").

2.　　Plaintiff served Defendant with copies of the Summons and Complaint on March 14, 2024.

3.　　Therefore, this Notice of Removal is timely because Defendant filed this removal within 30 days of being served with the Complaint. *See* U.S.C. § 1446 (notice of removal shall be filed within 30 days of service); *Murphy Bros. v. Michetti Pipe*

1

*Stringing, Inc.*, 526 U.S. 344, 347–48 (1999) (time period for removal begins when the defendant is served).

4.  Pursuant to 28 U.S.C. § 1446(a), true and accurate copies of all process, pleadings, and orders that have been filed and served in the State Court Action are attached hereto as **Exhibit A**.

5.  No other pleadings or substantive filings have been filed in the State Court Action.

6.  Plaintiff alleges that she brings "this class action against Defendant for its failure to properly secure and safeguard Plaintiffs' and other similar situated individuals' personal identifiable information ('PII') and protected health information ('PHI'), including name, address, date of birth, financial account information, medical records number, health insurance plan member ID, and claims data (including diagnoses listed on claims) (cumulatively, the PII and PHI defined as 'Private Information') from an unauthorized third party" (the "Incident"). (Compl. ¶ 1.)

7.  Plaintiff alleges that the Incident "arises out of the recent targeted cyberattack against Defendant that allowed a third party to access Defendant's computer systems and data resulting in the compromise of highly sensitive personal information." (*Id.* ¶ 2.)

8.  Plaintiff alleges that the Incident, which allegedly occurred at various times between September 20, 2023, and December 5, 2023, "was a direct result of UW Health's failure to implement adequate and reasonable cybersecurity procedures and protocols necessary to protect consumers' Private Information." (*Id.* ¶ 4.)

9. Based on these allegations, Plaintiff asserts the following causes of action against Defendant: (1) negligence; (2) negligence *per se*; (3) breach of fiduciary duty; (4) unjust enrichment; (5) breach of implied contract; (6) breach of confidentiality of health records; and (7) violation of Wisconsin Deceptive Trade Practices Act. (*See generally, Id.*)

10. Plaintiff purports to bring these claims on behalf of herself and a putative class (the "Class"), defined as "[a]ll individuals residing in the United States whose Private Information was compromised as a result of the Data Breach, including all individuals who were sent the Notice of the Data Breach on or around early March 2024." (*Id.* ¶ 95.)

11. In support of the Class, Plaintiff alleges "UW Health services more than 800,000 individuals per year." (*Id.* ¶ 97.)

## JURISDICTION AND VENUE

12. This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. § 1332, and removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

13. Removal is proper under 28 U.S.C. § 1332(d), § 1441(a), and § 1453(b) because the United States District Courts have original jurisdiction over any class action: (i) involving a putative class of 100 or more members; (ii) where at least one member of the plaintiff class is a citizen of a State different from any defendant; and (iii) in which the matter in controversy exceeds (in the aggregate) the sum or value of $5 million, exclusive of interests and costs. *See Dart Cherokee Basin Operating Co. v.*

3

*Owens*, 135 S. Ct. 547, 554 (2014) ("CAFA's provisions should be read broadly.") [1] Here, all three conditions are satisfied.

14. Venue is proper in this Court because this Court is the judicial district and division embracing the place where the state court case was brought and is pending. The civil action was filed in the Dane County Circuit Court, a court within the Western District of Wisconsin. Thus, this Court is the proper district court to which this case should be removed. *See* 28 U.S.C. §§ 1441(a), 1446(a).

15. As set forth below, because all three CAFA requirements are satisfied here, removal of this action is appropriate.

## NO ADMISSION

16. Defendant denies any liability in this case, both as to Plaintiff's individual claims and as to the claims of the members of the putative Class. In alleging the amount in controversy and other matters in this removal pleading, Defendant does not concede any liability, damages, or any other claims or defenses. Defendant is only stating what the amount in controversy could be under Plaintiff's allegations as set forth in her Complaint.

## CLASS ACTION FAIRNESS ACT JURISDICTION
## PURSUANT TO 28 U.S.C. § 1332(d)

17. As a threshold matter, this civil action qualifies as a putative class action because Plaintiff seeks to certify a class defined as "[a]ll individuals residing

---

[1] By arguing that this matter is removable under 28 U.S.C. § 1332(d), Defendant does not waive any argument that this matter is improper for class certification, and all such arguments are expressly reserved.

4

in the United States whose Private Information was compromised as a result of the Data Breach, including all individuals who were sent the Notice of the Data Breach on or around early March 2024." (*Id.* ¶ 95.)

18. Plaintiff alleges that "[w]hile the approximate number of those impacted by this Data Breach is unknown at this time, UW Health has a prominent role in the American healthcare system. UW Health is the integrated health system of the University of Wisconsin–Madison serving more than 800,000 patients and over 24,000 employees at six hospitals and more than 90 primary and specialty outpatient locations in Wisconsin, Illinois, and Michigan." (*Id.* ¶ 5.)

19. Indeed, Defendant sent notices of this Incident to approximately 81,003 persons.

20. Accordingly, the Class involves 100 or more members as required by 28 U.S.C. § 1332(d)(5)(B).

21. An individual's citizenship is determined by the place of the person's domicile. *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012) ("But residence may or may not demonstrate citizenship, which depends on domicile—that is to say, the state in which a person intends to live over the long run. An allegation of 'residence' is therefore deficient"). "[C]itizenship for the purpose of 28 U.S.C. § 1332 depends on domicile rather than residence." *Id.*

22. Here, Plaintiff alleges that she is a citizen of Wisconsin. (Compl. ¶ 24.)

23. Absent other evidence to the contrary, Plaintiff is a citizen of Wisconsin.

5

24. Plaintiff also seeks to represent a Class of individuals defined as "[a]ll individuals residing in the United States whose Private Information was compromised as a result of the Data Breach, including all individuals who were sent the Notice of the Data Breach on or around early March 2024." (*Id.* ¶ 95.)

25. As noted above, Defendant notified 81,003 persons that their information may have been impacted in this Incident, and mailed notifications to them in all 50 states. Thus, although mailing addresses are not dispositive of citizenship for the purposes of CAFA, it is more likely than not that at least one member of the Class is a citizen of a state diverse from Wisconsin.

26. Defendant is a health care providercreated under the laws of the State of Wisconsin, with its principal place of business in Madison, Wisconsin.

27. Accordingly, minimal diversity exists because Defendant is a citizen of Wisconsin, and it is more likely than not that members of the putative class are citizens of a state other than Wisconsin.

28. It is well established that "a defendant's notice of removal need only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" to meet the amount–in–controversy requirement. *See, e.g.*, *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 89.

29. Although Plaintiff does not specify the total amount of damages sought, Plaintiff does allege that Defendant violated Wis. Stat. § 146.81, *et seq.* (*See generally*, Compl. ¶¶ 135–144.) Consequently, pursuant to Wis. Stat. § 146.84(1)(bm), Plaintiff requests the Court enter an Order awarding minimum

6

statutory exemplary damages of $1,000 to Plaintiff and each Class Member whose Private Information was compromised and stolen, as well as attorneys' fees and costs. (Compl. ¶ 144.)

30. Plaintiff also seeks an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law; an award of punitive damages, as allowable by law; an award of attorneys' fees and costs, and any other expense, including expert witness fees; and pre– and post–judgment interest on any amounts awarded. (*See* Compl., Prayer for Relief.)

31. As demonstrated below, Plaintiff's allegations in the Complaint make it more likely than not that the CAFA amount in controversy exceeds $5,000,000.

32. <u>Negligence and Negligence *Per Se* Claim</u>. Plaintiff brings claims for negligence and negligence *per se*. (Compl., ¶¶ 103–10 (negligence); *id*. at ¶¶ 111–18 (negligence per se)).

33. Plaintiff alleges "UW Health owed a duty to Plaintiff and all other Class Members to exercise reasonable care in safeguarding and protecting their PII and PHI in its possession, custody, or control." (*Id*. ¶ 104.) Plaintiff further alleges that "UW Health knew, or should have known, the risks of collecting and storing Plaintiffs and all other Class Members' PII and PHI and the importance of maintaining secure systems." (*Id*. ¶ 105.)

34. Plaintiff alleges "UW Health had a duty to protect the PII and PHI of Plaintiff and Class Members." (*Id*.) Further, "UW Health breached these duties by

7

failing to exercise reasonable care in safeguarding and protecting Plaintiffs and Class Members' PII and PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII and PHI entrusted to it–including Plaintiffs and Class Members' PII and PHI." (*Id.* ¶ 107.)

35. Plaintiff also alleges "[i]t was reasonably foreseeable to UW Health that its failure to exercise reasonable care . . . would result in the unauthorized release, disclosure, and dissemination of Plaintiffs and Class Members' PII and PHI to unauthorized individuals." (*Id.* ¶ 108.) Plaintiff's Complaint contains no allegations that would support or suggest the amount in damages that she or the Class allegedly sustained as a result of Defendant's purported negligence or negligence *per se*. However, Plaintiff alleges that she and the Class have suffered ascertainable losses in the form of the benefit of their bargain, the diminution in value of their personal information, out–of–pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the attack, emotional distress, and the present and imminent threat of future harm, including fraud and identity theft. (*Id.* ¶¶ 2, 12.) Further, Plaintiff alleges that her and the putative Class's PII is the type of information that is valuable to cybercriminals because it is traded on the "cyber black–market" or "dark web." (*Id.*¶¶ 82–84.) Based on these allegations, one option for assigning an amount in controversy to these damages is through the cost of credit monitoring. *See* Compl., Prayer for Relief, where Plaintiff requests "an order

8

requiring UW Health to pay for credit monitoring services for Plaintiff and the Class of a duration to be determined at trial."

36.     Three main identity–protection agencies—Equifax, LifeLock, and Experian—advertise monthly rates for credit–monitoring services ranging from $14.99 to $24.99 per person per month. LifeLock offers a product, called Norton360 with LifeLock Advantage, which provides 1–Bureau credit monitoring with up to $100,000 in "stolen funds reimbursement" for $14.99 per month if paid annually. Similarly, both Equifax and Experian offer products that provide 3–Bureau credit monitoring with up to $1,000,000 in identity theft insurance for $19.95 (after the first month) and $24.99 per month, respectively. Multiplying just the cost of providing six months of credit–monitoring services at $14.99 (the cheapest of the three products) by the number of putative class members (81,003), the amount in controversy for just credit monitoring is approximately $7,285,410 (calculated as: the 81,003 individuals notified by Defendant, times 6 months, times $14.99 per month).

37.     Accordingly, the amount in controversy for Plaintiff and the putative Class far exceeds the $5,000,000 CAFA amount–in–controversy jurisdictional amount.

38.     <u>Breach of Fiduciary Duty</u>. Plaintiff also asserts that Defendant breached its fiduciary duty. (Compl. ¶¶ 119–22.)

39.     Plaintiff alleges that "[she] and Class Members either directly or indirectly gave UW Health their PII and PHI in confidence, believing that UW Health would protect that information. Plaintiff and Class Members would not have provided

9

UW Health with this information had they known it would not be adequately protected. UW Health's acceptance and storage of Plaintiff's and Class Members' PII and PHI created a fiduciary relationship between UW Health and Plaintiff and Class Members." (*Id.* ¶ 120.)

40. Therefore, Plaintiff alleges, UW Health had a fiduciary duty to act for the benefit of Plaintiff and the Class upon matters within the scope of their relationship. (*Id.* ¶ 121.)

41. Plaintiff asserts that Defendant breached that duty by failing to properly protect the integrity of the system containing Plaintiff's and Class Members' PII and PHI, failing to safeguard the PII and PHI of Plaintiff and Class Members it collected. (*Id.*)

42. Plaintiff's Complaint alleges, that as a result of Defendant's breach of its fiduciary duty, "Plaintiff and Class Members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII and PHI; (iii) out–of–pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII and PHI; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII and PHI which remains in UW Health's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII and PHI compromised as a result of the Data Breach; and (vii) actual or attempted fraud." (*Id.* ¶ 122.)

43. Plaintiff's Complaint contains no allegations that would support or suggest the amount in actual damages to which she or any of member of the Class are allegedly entitled for Defendant's alleged breach of its fiduciary duty. As such, Defendant does not include any specific "breach of fiduciary duty" damages in the calculation of the total amount in controversy. But, as stated above, six months of Norton360 with LifeLock Advantage for each member of the putative Class would amount to, at a minimum, $7,285,410.

44. <u>Unjust Enrichment</u>. Plaintiff alleges that "Plaintiff and Class Members conferred a benefit upon UW Health in the form of monies paid for production services and other services." (Compl. ¶ 124.)

45. Plaintiff also alleges that Defendant "accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class Members." (*Id*. ¶ 125.) As a result of this conduct, Plaintiff alleges that "[she] and Class Members suffered damages in an amount equal to the difference in value between their payments made with reasonable data privacy security practices and procedures that Plaintiff and Class Members paid for, and those payments without reasonable data privacy and security practices and procedures that they received." *(Id*. ¶ 126.)

46. Plaintiff's Complaint contains no allegations that would support or suggest the "value" or amount of "reasonable data privacy security practices and procedures" that she allegedly paid for versus what she allegedly received. Therefore, Defendant does not include in the calculation of the total amount in controversy Plaintiff's or the Class's alleged unjust enrichment damages. However, when

Plaintiff's and the Class's alleged unjust–enrichment damages are combined with the estimated amount in controversy above, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

47. <u>Breach of Implied Contract</u>. Plaintiff asserts that Defendant breached implied contracts with Plaintiff and the Class. (*Id.* ¶¶ 129–34.)

48. Plaintiff alleges that "Defendant required Plaintiff and Class Members to provide, or authorize the transfer of, their PII and PHI for UW Health to provide services. In exchange, UW Health entered implied contracts with Plaintiff and Class Members in which UW Health agreed to comply with its statutory and common law duties to protect Plaintiffs and Class Members' PII and PHI and to timely notify them in the event of a data breach." (*Id.* ¶ 130.)

49. Plaintiff alleges that "[she] and Class Members would not have provided their PII and PHI to UW Health had they known that UW Health would not safeguard their PII and PHI, as promised, or provide timely notice of a data breach." (*Id.* ¶ 131.)

50. Plaintiff asserts that she and Class Members fully performed their obligations under their implied contracts with UW Health, and Defendant breached the implied contracts by failing to safeguard Plaintiff's and Class Members' PII and PHI and by failing to provide them with timely and accurate notice of the Data Breach. As a result of Defendant's alleged breach, Plaintiff and Class Members sustained the same losses and damages listed above. (*Id.* ¶ 134.)

51.     Plaintiff's Complaint contains no allegations that would support or suggest the amount in actual damages to which she or any of member of the Class are allegedly entitled for Defendant's alleged breach of any implied contract. As such, Defendant does not include any specific "breach of implied contract" damages in the calculation of the total amount in controversy. But, as stated above, just six months of Norton360 with LifeLock Advantage for each member of the putative Class would amount to, at a minimum, $7,285,410.

52.     <u>Violation of Wisconsin Deceptive Trade Act (WDTA), Wis. Stat. §§ 100.18, *et seq.*</u> Plaintiff alleges that Defendant "violated the WDTA by fraudulently advertising material facts pertaining to its system and data services by representing and advertising that it would maintain security practices and procedures to safeguard its systems and data from cyberattacks like the Data Breaches, to prevent infiltration of the security system so as to safeguard Private Information from unauthorized access; (b) misrepresenting material facts pertaining to its system and data services by representing and advertising that it would maintain security practices and procedures to safeguard its systems and data from cyberattacks like the Data Breaches, so as to safeguard Private Information from unauthorized access; (c) omitting, suppressing, and concealing the material fact of the inadequacy of the security practices and procedures; (d) engaging in deceptive, unfair, and unlawful trade acts or practices by failing to maintain security practices and procedures to safeguard its systems and data from cyberattacks like the Data Breaches, to prevent infiltration of the security system so as to safeguard Private Information from

unauthorized access; and (e) engaging in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the Data Breach to enact reasonable security practices to safeguard its systems and data from cyberattacks like the Data Breaches." (*Id.* ¶ 148.)

53. Plaintiff asserts that "[t]he purpose of Defendant's misrepresentations . . . was to minimize the harm and injury–in–fact Plaintiffs [sic] and Class Members are facing caused by the Data Breach, and therefore increase the sales and use of Defendant's goods and services." (*Id.* ¶ 149.)

54. Plaintiff alleges that "Defendant knew or should have known that its computer systems and security practices and procedures were inadequate, and that risk of the Data Breaches and theft was high." (*Id.* ¶ 150.) Therefore, "Defendant's actions in engaging in the above–named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff and Class Members." (*Id.*)

55. As a result of Defendant's alleged deceptive practices, Plaintiff's Complaint asserts that she and the Class are entitled to damages, including reasonable attorney fees and costs, punitive damages, and other relief which the court deems proper. (*Id.* ¶ 151.)

56. Although Plaintiff's Complaint does not contain any allegation that would support or suggest the amount in actual damages to which she or any member of the Class is allegedly entitled to for Defendant's breach of the WDTA, Plaintiff

14

requests putative damages. Plaintiff also requests a general award of putative damages. (Compl., Prayer for Relief.)

57. When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered." *Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 572 (6th Cir. 2001) (internal quotation marks and citation omitted). Courts have approved punitive damage ratios of 4:1, punitive to compensatory. *See, e.g., Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 23–24 (1991) (4 times the amount of compensatory damages might be "close to the line" but did not "cross the line into the area of constitutional impropriety"). As such, the amount–in–controversy requirement is met by Plaintiff's requests for punitive damages.

58. <u>Prayer for Other Monetary and Injunctive Relief and Other Claims</u>. In addition to the damages discussed above, Plaintiff also seeks declaratory and injunctive relief. This includes, but is not limited to, "equitable relief enjoining UW Health from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs and Class Members' PII and PHI," "equitable relief compelling UW Health to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of PII and PHI compromised during the Data Breach," and "an order requiring UW Health to pay for credit monitoring services for Plaintiff and the Class of a duration to be determined at trial." (Compl., Prayer for Relief.)

59. Once again, no allegations in the Complaint allow Defendant to calculate the amount of Plaintiff's injunctive relief demand, and, therefore, Defendant has not included that value in the calculation of the total amount in controversy. Nevertheless, after adding these additional alleged damages with the cost of six months of credit monitoring for the entire putative Class, the amount in controversy further exceeds CAFA's $5,000,000 threshold.

## NOTICE

60. Defendant is serving this written notice of the removal of this case on Plaintiff's counsel, and a notice of filing this Notice of Removal will be promptly filed with the Dane County Circuit Court in accordance with 28 U.S.C. §1446(d).

## CONCLUSION

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant hereby removes the State Court Action from the Dane County Circuit Court to the United States District Court for the Western District of Wisconsin.

Respectfully submitted this 12th day of April, 2024.

By: *Electronically signed by Jeffrey A. Mandell*
Laura E. Callan, SBN 10117353
Jeffery A. Mandell, SBN 1100406
**STAFFORD ROSENBAUM LLP**
222 West Washington Ave., Ste 900
P.O. Box 1784
Madison, WI 53701–1784
608.256.0226
lcallan@staffordlaw.com
jmandell@straffordlaw.com

Casie D. Collignon
Admitted in this Court (CO Bar #35160)
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202–2662
Telephone: (303) 861–0660
Facsimile: (303) 861–7805
ccollignon@bakerlaw.com

*Counsel for Defendant UW Health*